Helen Russell PIERCE, Executrix of the Last Will and Testament of George Washington Pierce, Deceased, Appellant,

v.

AERONAUTICAL COMMUNICATIONS EQUIPMENT, Inc., Appellee.

No. 16830.

United States Court of Appeals
Fifth Circuit.

May 12, 1958.

Walter Humkey, Miami, Fla., David Rines, Robert H. Rines, Rines & Rines, Boston, Mass., Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., of counsel, for appellant.

Walter H. Free, New York City, Sydney L. Weintraub, Miami, Fla., Dana M. Raymond, Richard A. Lochner, Brumbaugh, Free, Graves & Donohue, New York City, of counsel, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from an order of the United States District Court for the Southern District of Florida granting

defendant's motion for summary judgment. The defendant is charged with infringing five patents issued to the former, now deceased, plaintiff, George Washington Pierce. The five patents in the suit comprise Nos. 2,133,642, 2,133–643, 2,133,645, 2,133,646, and 2,133,648, all issued on October 18, 1938.[1] It is alleged that the defendant a Florida corporation, is infringing plaintiff's exclusive rights under these patents by manufacturing, using and selling electrical and electromechanical vibrator systems and apparatus, including the Pierce oscillator. The summary judgment has the effect of ruling that all of the patents in issue are invalid.

The primary, but not the sole, importance of the patents involved is in the field of radio broadcasting where a need had existed for controlling the frequency of oscillating electrical circuits. Radio communication is transmitted by carrier waves which are generated from the transmitter by an alternating current of electricity flowing in and out of an antenna, composed of wires suspended in the air. Radio waves are produced when the current oscillates at a high frequency. Since communication between a sender and a receiver is possible only when both are tuned to the same frequency, it is highly desirable that the frequency of the waves sent out from a transmitter remain constant.

The problem of attaining constant frequency had existed prior to 1912 when deForest discovered that the thermionic vacuum tube or triode could be used to generate electric oscillations. This invention provided a feasible method, and since 1912 many experts in the field searched for improved means of controlling the frequency of electric systems. The principal fault with the deForest tube was that after the circuit had been in operation a while the elements in the circuit became heated and an undesirable amount of variation in the frequency resulted.

It was finally through the use of piezoelectric crystals that the solution came. These crystals were first noted in 1880 by Jacques and Pierre Curie. Because of their component substances, direct current when applied to them will cause the surfaces of the crystal to contract or expand. When mechanical forces are applied to contract or expand the crystal, electrical potentials of opposite sign are built up on the opposing surfaces of the crystal. Little had been accomplished in using the piezoelectric crystals in the radio field until Professor Walter G. Cady, of Wesleyan University began experimenting with the possibilities, and his work eventually attracted the attention of Pierce.

Professor Pierce discovered a means whereby the circuit could oscillate without employing any inductive coils or condensers and this could be accomplished at a remarkably constant frequency. In the Pierce oscillator, as it has come to be called in the field, a piezoelectric crystal is positioned in the input circuit, between the cathode and the grid or control electrode, or between the grid or control electrode and the anode. In the first named system the tunable resonant output circuit, consisting of the inductance coil and the condenser, is tuned to a higher frequency than the natural frequency of the crystal. Then when the system is in operation it will produce oscillations at a constant frequency determined by the natural frequency of the crystal. An important characteristic of the Pierce oscillator is that with the aid of a piezoelectric crystal having only two electrodes, it is not necessary to rely upon mechanical feed-back through a four-electrode crystal to obtain oscillations of very high frequencies such as are needed in radio transmission, and this is accomplished with the assurance that the oscillator will not oscillate except at that specific high frequency.

The Pierce oscillator is in wide use throughout the world through the licens-

1. The complaint also alleged infringement of a sixth patent, No. 2,266,070, but plaintiff withdrew it at an earlier stage in the litigation.

ing agreements granted by Professor Pierce, and it is acknowledged that Pierce has made a significant contribution to the field of electrical circuits and radio transmission.

At the time of inventing the Pierce oscillator, Pierce invented a number of subsidiary electrical systems for which, by application of February 25, 1924, he endeavored to obtain a single patent covering them all. Since this application included not only general claims for the use of a piezoelectric crystal to control the frequency of an oscillating system but also specific claims for the combination of a radio transmitter and receiver in which such crystals could be used, the Patent Office held that more than one invention was described in the application and ordered a division. In compliance with this order Pierce filed a number of additional applications and several of the resulting patents are involved in this suit. One of the additional applications matured, however, on January 20, 1931, into patent No. 1,789,496, and this patent expired in 1948, before the defendant began the infringement acts complained of in this suit.

Patent No. 1,789,496, consisting of three claims, is for a radio transmitting and receiving system in combination, having a means of keeping the oscillations of both the transmitter and receiver at the same constant frequency. Claim 1 specifically mentions the use of a piezoelectric body for controlling the frequency of these oscillations and that would seem to allow the piezoelectric-crystal-controlled oscillators shown in the Cady patent No. 1,472,583 to be used as an element in the combined transmitting and receiving system. Claim 2 specifies the use of an electro-mechanical vibrator having two electric terminals in a single vacuum tube circuit, which circuit oscillates at a frequency widely independent of the other elements in the circuit. It thus apparently specifies the Pierce oscillator. Claim 3 is much broader in that it calls for any kind of prior art electro-mechanical vibrator to control the frequency.

Action on Pierce's other applications, which resulted from the order for a division was delayed because of requests for a fuller explanation of the properties of piezoelectric crystals and the failure to pay on time the required final fee. On April 20, 1930, the Patent Office issued a patent to John M. Miller covering claims 51, 52, 54, 55, 56 and 61 to 68 inclusive of Pierce's now patent No. 2,133,642. Litigation resulted in the holding that Pierce and not Miller was the inventor of the Pierce oscillator represented by the above claims. Miller v. National Broadcasting Company, Inc., 3 Cir., 79 F.2d 657; Miller v. Pierce, 97 F.2d 141, 25 C.C.P.A., Patents, 1195. Thereafter, on October 18, 1938, the Pierce patent, No. 2,133,642, and the other four patents involved in this suit were issued.

After the expiration in 1948 of the protection provided by Patent No. 1,789,496 various business concerns began to produce electrical vibrator systems, which Pierce believed infringed his six patents, which had not, by that time expired. He entered nine suits in several different circuits against various defendants.[2]

In the instant suit the plaintiff moved for a preliminary injunction to restrain the defendant from infringing the thirteen claims of patent No. 2,133,642 which were in issue in Pierce's litigation with Miller. That motion was denied and the denial was affirmed by this Court on the grounds that there was no showing of irreparable injury or abuse of discretion. 223 F.2d 410.

Since the District Court in the issue now before us based its summary judgment upon the "reasoning" of two First Circuit Court of Appeals cases instituted by the plaintiff against others than the present defendant, it becomes necessary at the outset to consider those opinions. In American Communications Co. v. Pierce, 1 Cir., 208 F.2d 763, both parties

2. The eighth of those suits was Pierce v. Allen B. Du Mont Laboratories, D.C.Del., 156 F.Supp. 237. Footnote 1 therein lists the nine cases.

moved for summary judgment only on claims 51, 52, 54, 55, 56 and 61 to 68, inclusive, of the basic patent, No. 2,133,-642. The district court 111 F.Supp. 181, holding that the claims were valid and infringed, granted plaintiff's motion and denied defendant's motion. The Court of Appeals reversed, holding that generic patent No. 2,133,642 for an electrical system relating particularly to the use of a piezoelectric crystal for producing at a constant frequency the oscillation of such system, when read specifically on the combined transmitting and receiving systems discloses no invention distinct and separate from that of patent No. 1,789,496 and that it would not extend the plaintiff's monopoly under the mantle of patent No. 2,133,642. The Court reasoned that neither claim 1 nor claim 3 of patent No. 1,789,496 revealed any distinctive contribution to the art of frequency stabilization or radio systems; and when analyzing claim 2 with a typical claim of patent No. 2,133,642, claim 67, clause by clause, it concluded that the only significant difference indicated in the claims is the use to which the piezoelectric crystal may be put. Claim 2 of patent No. 1,789,496 narrows the operation of the crystal to the combined transmitting and receiving system whereas claim 67 of patent No. 2,133,642 more broadly states its use in any generating system. But as the radio system described by Pierce was held not to be novel in and of itself, the only inventions were the position and the method in which the two-electrode piezoelectric crystal was used in the combination.

In the other case, the district court in Pierce v. Hewlett-Packard Company, 125 F.Supp. 329, granted defendant's motion for summary judgment, declaring the above claims of patent No. 2,133,642 invalid. The Court of Appeals affirmed on the authority of the American Communi-cations Co. case to the effect that there was double patenting in that the plaintiff's patents Nos. 1,789,496 and 2,133,642 made only one distinctive contribution, which was the novel use of the two electrode piezoelectric crystal in a single vacuum tube circuit. 1 Cir., 220 F.2d 531.

As the present appeal involves all five of Pierce's patents it is apparent that there is more in issue in this suit than in the First Circuit cases and in the prior appeal in this case. The claims of patent No. 2,133,642, other than the thirteen litigated by the Court of Appeals of the First Circuit and the claims of the remaining four patents were not in issue or even considered by the First Circuit [3] in the cases upon which the district court in this case based its holdings. As the plaintiff is entitled to a considered opinion by the district court, she should be given an opportunity to present evidence including expert testimony, documents and exhibits to prove that the nonlitigated claims involve improvements or entirely different inventions from those involved in the thirteen claims of patent No. 2,133,642. This is entirely apart from the question of correctness of the trial court's judgment as to these thirteen claims.

It does appear that plaintiff, in order to secure a ruling that could have decided the validity issue in her favor, selected for the prior suits and the preliminary injunction motion in this suit certain claims of patent No. 2,133,642, and termed it the "basic patent," but this decision should not preclude her from having the courts pass upon the validity of the other patents. Since there is a different defendant in this suit no issue of res judicata or collateral estoppel can arise to bind the plaintiff by any holding or stipulation in the prior suits.

3. It is noted that upon remand of the American Communications Company case, Judge Ford, in an unpublished opinion, Civil Action No. 51,526–F, January 31, 1958, considered the other claims and patents and held that all but patent No. 2,133,643 were void for double pat-enting. He, therefore, granted summary judgment for the defendant in respect to all patents except that one. The issue as to that one remains to be tried. This opinion could not have been a basis for the district court's decision which was entered May 2, 1957.

■ We ought not dismiss too quickly the fact that the Patent Office Examiner ordered a division of plaintiff's original application on the ground that there were separate and distinct inventions and that six patents were granted from plaintiff's applications. As was stated in In re Cady, 77 F.2d 106, 109, 22 C.C.P.A., Patents, 1190, decisions of the examiner "should not be lightly overruled." [4] The burden of establishing invalidity of a patent rests upon the party asserting it and that burden is heavy. 35 U.S.C.A. § 282; Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983. From the status of the record regarding these patents it does not appear that these patents received the consideration from the court to which they were entitled, and the case was not, therefore, ripe for summary judgment.

In regard to claims 51, 52, 54, 55, 56 and 61 to 68 inclusive of patent No. 2,133,642, we find that the reasoning of the American Communications case and the reasoning of the Hewlett-Packard case, even if valid concerning double patenting, when placed together, do not necessarily preclude plaintiff's success in this case. It is still open to the plaintiff to contend and prove that the 1,789,496 patent was invalid for want of invention and that the 2,133,642 patent is not, therefore, void for double patenting. See O'Reilly v. Morse, 15 How. 62, 14 L.Ed. 601; Thomson-Houston Electric Co. v. Ohio Brass Co., 6 Cir., 80 F. 712. If the combination patent, No. 1,789,496 was not a valid invention, it was void *ab initio;* and having no existence there could be no monopoly relating to it and it could not be used as a predicate for double patenting. Since this case must be remanded for trial upon the merits of the above patents, plaintiff in all fairness

should be allowed an opportunity to present this proof.

■ In explaining its American Communications decision, the First Circuit Court of Appeals said in Hewlett-Packard that "the plaintiff in patents Nos. 1,789,496 and 2,133,642 made only one distinctive contribution." Further it stated:

"The plaintiff received patent No. 1,789,496 only because of his contribution of a device which stabilized the frequency of oscillations of an electric circuit. Without this device the patent would not have been granted. The plaintiff cannot extract this essential element and make it the subject of a subsequent patent. Palmer Pneumatic Tire Co. v. Lozier, supra, 90 F. [732] at page 744, see Application of Horneman, 1952, 194 F.2d 108, 39 C.C.P.A., Patents, 809. The Pierce oscillator, the subject of patent No. 2,133,642 rather than the production of a constant beat, is the essential distinguishing feature of combination patent No. 1,789,496. See Application of Coleman, 1951, 189 F.2d 976, 38 C.C.P.A., Patents, 1156." [220 F.2d 532.]

This language suggests that patent No. 1,789,496 was not valid at all in that it was issued for a combination radio transmitting and receiving system with claims both using and not using Pierce oscillators. It can be argued that if the combination, the idea of the patent, lacks invention, the entire patent is invalid. In the situation, as in patent No. 1,789,496, in which the patentee relies upon the combination as a whole, rather than one element of it, the court should judge the combination itself as a whole. See Rieke Metal Products Corp. v. Barrel Fitting & Seal Corp., 7 Cir., 100 F.2d 259; 40 Am. Jur., Patents § 163. Where the patent is

---

4. Although the Patent Act of 1952, especially section 121 of Title 35 was not in effect when the Patent Office ordered the division in this case, it does embody the policy of protecting the patentee in certain respects, including the benefit of the earlier filing date, when a division is ordered by the Office. The re-

port from the House of Representatives Committee on The Judiciary, H.R.Rep. No. 1923, 82nd Congress, 2nd Session, 1952 states that "neither of the resulting patents can be held invalid over the other merely because of their being divided in several patents."

for a combination and no claim is made specifically for any one of the elements, it is conclusively presumed that the elements are old in the art or are not patentable. Richards v. Chase Elevator Co., 159 U.S. 477, 16 S.Ct. 53, 40 L.Ed. 225; Harris v. Ladd, 8 Cir., 34 F.2d 761; City of St. Louis v. Prendergast, 8 Cir., 29 F.2d 188. The district court, therefore, must ascertain first whether claims No. 1 and No. 3 are too broad, and if the decision is that they describe radio systems already in the public domain, then it must proceed to determine whether the Pierce oscillator is claimed sufficiently in claim No. 2 to provide the combination with an element of novelty. If upon this analysis, invention is found lacking, patent No. 1,789,496 is invalid and there can be no double patenting.

Even if the First Circuit cases have analyzed the situation correctly, they do not proceed to the point of considering the position of a patentee who has a patent on a combination invention which includes in it a patentable element. The plaintiff in this case may be able to prove that the Pierce oscillator itself is not sufficiently described in claim 2 of patent No. 1,789,496 to provide Pierce with sufficient protection. If someone had used the Pierce oscillator in a system other than the radio system described in No. 1,789,496, the plaintiff would have had difficulties, perhaps insurmountable, in proving that he was afforded protection under No. 1,789,496. A patent on a combination is a patent on the functioning whole, not on the separate parts and the fact that an unpatented element of a combination may distinguish the invention does not draw to it the privileges of a patent. Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corporation v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396; Rowell v. Lindsay, 113 U.S. 97, 5 S.Ct. 507, 28 L.Ed. 906.

The reasoning of the above First Circuit opinions is, moreover, opposed to the basis of the division order and places the inventor in a perplexing dilemma. He must divide his claims into separate applications for separate patents to comply with the Patent Office's requirements, but when he does this he faces the prospect of losing part of his protection, if, as in this case, the patents are issued at different times, and the double patenting argument is used against him. If, as appears to be undisputed, the plaintiff did make a significant contribution with the Pierce oscillator, he is entitled to a patent on it alone to prevent its use without his consent in any combination and for the full 17 years. If the oscillator is not specifically claimed as such in patent No. 1,789,-496 that patent should stand or fall as a combination patent and have no bearing on the oscillator patent No. 2,133,642; otherwise by obeying the Patent Office's order the plaintiff is denied a portion of the protection to which he is entitled.

Since it was the Patent Office which required the division that led to the two separate patents, plaintiff does not come under the rule of Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732, prohibiting one from extracting an essential element of his invention from a former patent without which that patent would not have been granted and taking it for the subject of a new patent. Plaintiff originally had presented all of his claims in 1924 and because of the separation ruling and the litigation with Miller he was not awarded a final patent on the oscillator itself until 1938.[5] He is not then in the position of one who tries to extend his coverage by taking the element from the combination for a later and separate patent. Plaintiff should now be allowed to prove that the oscillator is not specifically claimed in patent No. 1,789,496, and that at most it was only protected by that patent to the extent it was used in the combination described therein.

The judgment of the District Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

5. This is one of the evils to which section 121, Title 35 of the Patent Act of 1952 is directed, see footnote 4 above.