**SHU-CONDITIONER, INC., Plaintiff**

v.

**BIXBY BOX TOE COMPANY, Inc., Defendant.**

Civ. A. No. 58-450.

United States District Court
D. Massachusetts.

June 17, 1960.

Kenway, Jenney, Witter & Hildreth, Herbert P. Kenway, Boston, Mass., for plaintiff.

W. R. Hulbert, Wm. W. Rymer, and Fish, Richardson & Neave, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

The plaintiff in this action charges infringement of Patent No. 2,818,832, issued to George H. Bushway on January 7, 1958, and assigned by him to the plaintiff. The defendant denies infringement and asserts that all the claims of the patent are invalid for lack of invention and because of public use or sale more than one year prior to their presentation to the Patent Office in their present and final form.

The patent in suit covers a box toe blank conditioning machine which is used in the manufacture of shoes. A box toe blank is a roughly crescent shaped piece of fabric impregnated with a plastic which makes the blank hard and fairly inflexible. To render it pliable it is treated with a solvent and can then be built into shoes and harden in place. The "conditioning" to which the patent refers is this treatment in a solvent and involves wetting the blank and mulling, i. e., letting the solvent soak it through.

Until the arrival on the market of the machine of the patent in suit, the only widely available machine was the Schoenky machine, which was manufactured and distributed by the United Shoe Ma-

chinery Corporation. The Schoenky machine was specifically designed to condition the Celastic toe, the first box toe activated by a nonwater solvent, and later also the so-called Lucky Strike toe. Both of these contained as the stiffening agent pyroxylin. The third, and only other commercial solvent blank was the polystyrene, which was developed by the defendant and first came on the market in 1947.

In 1951 or 1952 Mr. Bushway's nephew, who was a principal of a box toe company in Haverhill, suggested to Mr. Bushway, who is an inventor, that there was a need for another box toe conditioning machine. Both the defendant herein and Beckwith Arden Co., now half-owner of the plaintiff corporation with Mr. Bushway, were minor suppliers of solvent box toes, but both were handicapped by difficult competitive problems. Since United Shoe Machinery Corporation owned the Schoenky machine, they encountered serious obstacles when trying to demonstrate and sell their box toe blanks. These difficulties further increased with the arrival of the polystyrene blanks as they required a different solvent from that used for the pyroxylin toes, and necessitated the draining and cleaning of the conditioning machine before and after each demonstration.

▮ After several months of trial and error, Mr. Bushway developed the prototype of the machine now in suit, which is, without doubt, a great improvement over the Schoenky machine. It is far simpler, smaller, lighter in weight, and considerably less expensive. However, for the reasons given below I am constrained to hold the patent invalid.

First, I find the patent invalid for lack of invention.

The patent in suit describes a machine which consists of a cast aluminum rectangular housing, one-half of which is designed to hold the solvent. The other half, which is covered, contains a revolving drum (or several disks) with protruding pins. A small amount of solvent is continuously fed into the conditioning chamber through an opening in the partition. The blank is fed directly on to the drum or disks, is impaled on the pins, whisked through the solvent, and discharged on to a grate which is attached to the housing. The patent has four claims, the first of which reads as follows:

"1. A machine for conditioning box toe blanks and the like, comprising a housing providing a liquid holding chamber therein between end walls, a shaft extending horizontally through the chamber and rotatably supported in said walls, a member fixed to the shaft between said walls and having a periphery disposed concentrically of the shaft, means in the housing providing a curved blank engaging surface disposed closely adjacent to and extending arcuately about the portion of said periphery which is below said shaft and providing a passage extending about the shaft between said curved surface and periphery of said member through the bottom of the liquid containing chamber, means on and extending outwardly from said periphery for engaging box toe blanks supported on said surface and carrying them through said liquid containing portion of the chamber upon rotation of said member therethrough, and means providing in and beneath said surface an upwardly open channel extending transversely across the first named passage below the shaft, said open channel forming a gap in said surface across the path of movement of the blanks through which the liquid in the chamber can pass into continuous contact with the outer face of each blank as the blank is carried across the gap."

Claim 2 adds the limitation that a partition with a liquid passage in the bottom divides the liquid holding chamber into a reservoir and a conditioning chamber. Claim 3 differs from Claim 1 only in that the pins are said to be longitudinally

adjustable in the pin member, to which Claim 4 adds that the pin member is a disk.

The file wrapper which was introduced in evidence indicates that the application for patent was rejected repeatedly over prior art patents of Schoenky and Lee [1] until the feature of omitting the feed and delivery rolls, which were essential elements in Schoenky, was written into the claims by stressing the fact that the blanks are fed *directly* in from the entry slot unto the land and *directly* out from the pin roll through the exit slot (plaintiff's emphasis).

There is no invention in this feature because the omission of Schoenky's presser and delivery rolls is taught in a number of prior art patents in the box toe conditioning field, e. g. Patents to Lovell, No. 1,766,442, Stauffer, No. 2,-631,564, and to Kane, No. 1,424,914. The "direct feed-in, feed-out" feature is furthermore, well known in the analogous machines for wetting small objects, e. g., Patent to Yandle, No. 1,130,127, Prune Dipping Machine; Patent to Janish, No. 1,185,329, Bottle Coating Machine; Patent to Davis, No. 1,416,796, Coating Process and Apparatus; Patent to Allen, No. 1,525,018, Machine for soaking substances in liquids; and Patent to Thompson, No. 1,795,153, Method of incasing edibles.

The omission of these elements, moreover, was accompanied by the omission of their functions and is not, for that reason, invention. Richards v. Chase Elevator Co., 1895, 159 U.S. 477, 16 S.Ct. 53, 40 L.Ed. 225. As was described above, conditioning consists of wetting the blank and letting the solvent soak through. In the early pyroxylin blanks porosity varied widely and while in some cases it was difficult to wet through the coating, in others, the blank picked up an excess of liquid. Both results were undesirable. The presser roll of Schoenky was designed to optionally press the blanks against a large number of pointed projections to increase porosity, while the delivery roll performed a squeezing-wiping function to remove any excess solvent. Since in the new polystyrene blanks porosity is fairly uniform, neither of the above elements and the function they perform is necessary and the Bushway machine, therefore, omits both. The machine of the patent in suit is a simplification of prior art machines and was made possible by new and simplified processing requirements. "[It] was the product only of ordinary mechanical or engineering skill and not of inventive genius", Concrete Appliances Co. v. Gomery, 1925, 269 U.S. 177, 185, 46 S.Ct. 42, 45, 70 L.Ed. 222, and the patent is, therefore, invalid.

There is no question that the machine was commercially very successful, but "commercial success without invention will not make patentability", Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162. Commercial success is a factor to be considered only where the question of invention is in doubt, Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 1945, 324 U.S. 320, 65 S.Ct. 647, 89 L. Ed. 973, which is not the case here.

Through the availability of new lightweight metals and the resulting desire to make the machine transportable for demonstration, the plaintiff successfully reduced the Schoenky machine to a portable, compact machine, but without contributing invention thereby.

Second, I find the claims invalid because of public use and sale more than one year prior to their presentation to the Patent Office.

The patent in suit was finally granted on the basis of the "direct feed-in, feed-out" concept which was first presented to the Patent Office as the alleged invention in September, 1957. Bushway machines had been sold to Bixby at least as early as August 1954.

The statute requires the inclusion in an application for patent "a specification as prescribed by section 112", 35 U.S.C.

---

1. Schoenky, No. 1,895,524, and No. 1,927,954, British Patent to Lee, No. 669,855.

§ 111. Section 112 provides, inter alia, that:

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

Although the original drawings show the omission of feed and delivery rolls, until the filing of the last amendment to the application, none of the specifications claim the "direct-in, direct-out" feature as the invention. On the authority of Muncie Gear Works v. Outboard Marine & Mfg. Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171, I am constrained to hold that the effective filing date of this patent was September 10, 1957, when the decisive concept was first disclosed to the Patent Office. Accordingly, the patent is invalid for prior public use and sale.

There remains for consideration the question of infringement which, while not relevant to my decision, may become relevant if the case is appealed.

The defendant admits infringement by its original machine which was received in evidence as Exhibit 7. But it denies infringement by its current model for the reasons that the smooth bearing surface of this machine has no "land" as required by the claims and that it, unlike the Bushway machine, incorporates small knobs in the wall at the top of the housing where the blanks enter.

I find these departures from the teaching of the patent too superficial to avoid infringement. Even with the incorporation of these changes the defendant's machine performs the identically same function in substantially the same way to achieve the exact same result as that described in the patent, and therefore, infringes the claims of the patent. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S. Ct. 854, 94 L.Ed. 1097; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., supra.

Judgment may be entered in accordance with this opinion.