## In re PORTER.
### Patent Appeal No. 3253.

Court of Customs and Patent Appeals.
March 5, 1934.

H. C. Bierman, of New York City (Ellis S. Middleton, of New York City, and William P. Spielman, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting all of the claims of appellant's application for want of invention in view of the cited prior art.

The appealed claims are 1 to 3, inclusive, and 15 to 23, inclusive. Claims 19 to 23, inclusive, are product claims; all of the others are method claims.

Claims 1, 16, 20, and 23 are illustrative and read as follows:

"1. A method of treating an initial calcium sulfate sludge resulting from the reaction between sulphuric acid and phosphate rock containing acid which consists in neutralizing said acid with lime."

"16. A method of treating a calcium sulfate sludge containing an acid which consists in neutralizing said acid with calcium oxide, calcining the resultant product and adding thereto an additional amount of calcium oxide in sufficient quantity to counteract any subsequently developed acidic material."

"20. A product prepared from phosphoric acid sludge comprising calcined gypsum with an admixture of lime equivalent to substantially 2 lbs. per ton."

"23. An article of manufacture comprising ground calcined gypsum containing calcium phosphate."

The references cited are as follows:

Smith et al., 111,267, January 24, 1871.
Edwards, 1,713,868, May 21, 1929.
Edwards, 1,756,637, April 29, 1930.

As indicated by said quoted claims, appellant's application relates to a method of treating calcium sulfate sludge containing acid, which treatment consists of neutralizing said acid with chemical lime, calcining the resultant product, and adding an additional amount of lime in sufficient quantity to counteract any subsequently developed acidic material; the lime in the final product being equivalent to substantially two pounds per ton. This final product is known as calcined gypsum, or plaster of paris.

The patent to Smith relates to plasters for walls, and discloses a plaster composed of hydrate of lime and calcined gypsum.

The patent to Edwards, 1,713,868, relates to a process of treating aciduous by-product calcium sulfate. The process includes neutralizing the acid remaining in the calcium sulfate sludge by the use of a neutralizing agent. Following the neutralization, the sludge is filtered and the resulting product calcined. The specification states that: "I find in actual practice that applying the neutralization by grinding seems to have an unexpected efficiency over the previous method of applying neutralization in solution and agitation alone. This, I believe, results from the effect of the particles of neutralizer which, as it is fed to the slurry entering the mill, results in an intimate blending effect so that there is an increased attrition of the particles and especially the coarser particles, so that the neutralizer in itself becomes an attrition agent. It is, therefore, of some advantage to have the neutralizing agent of attritive characteristic. While I have referred to the attrition effect of the neutralizer as fed in wet slurry form, this effect may be attained even with the neutralizer fed in dry, if the particles thereof are of a hardness suf-

ficient to give a frictional effect during the grinding or pounding action of the grinding media in the mill."

The patent to Edwards 1,756,637, relates to a method of preparing by-product calcium sulfate for plaster. By-product calcium sulfate sludge, resulting from the production of phosphoric acid from phosphate rock and sulphuric acid, is treated with sulphuric acid, and the phosphoric acid and the sulphuric acid present in the product after such treatment are neutralized by the addition of lime.

Both of said Edwards patents, and also appellant's specification, refer to a previous patent to Edwards, No. 1,548,358, as prior art, but said patent is not found in the record. The reference to said patent in appellant's specification reads as follows: "The patent to Edwards, No. 1,548,358, dated August 4, 1925, discloses the neutralization of this residual acid in the calcium sulfate sludge by means of sodium carbonate and points out with some particularity the detrimental effect of the presence of acid prior to calcination of this sludge. * * *"

All of appellant's claims were rejected by the examiner upon the Edwards patent, 1,-756,637; claims 1 to 3, inclusive, and claims 21 and 23 were rejected also upon the Edwards patent, 1,713,868; and claims 19 and 20 were rejected by him also as unpatentable over the reference of Smith.

The Board of Appeals expressly affirmed the rejection of all of the claims upon the grounds stated by the examiner, and also held that, as appellant admitted in his specification that the first Edwards patent, 1,-548,358, showed the use of sodium carbonate as a neutralizing agent in the treatment of calcium sulfate sludge, the use of lime for such purpose would be no more than an obvious selection of a well known acid-neutralizing material.

Appellant has filed 19 reasons of appeal, but his principal contentions are as follows:

1. That the use of lime as a neutralizing material was new and inventive.

2. That even if it should be held that lime was shown by the prior art to be a neutralizing material, the use of chemical lime for that purpose was new and involved invention.

3. That the principal reference, Edwards, 1,756,637, does not disclose a method of treating an *initial* calcium sulfate sludge.

4. That the grinding of the calcined gypsum treated by appellant's process resulted in a new product which involved invention.

5. That the excess of lime in the final product, equivalent to substantially two pounds per ton, resulted in a new product that involved invention.

Considering these contentions in the order named, it is clear to us that Edwards in his patent, 1,756,637, discloses the use of lime for the same purpose that it is used in appellant's process. The specification of this patent states: "In the manufacture of phosphoric acid three raw materials are required, namely, rock phosphate, sulphuric acid and weak phosphoric acid liquor. These materials are called the reactants and are put together in certain specific proportions and under certain conditions so that the highest possible extraction or production of phosphoric acid results."

The specification then recites that, in the mechanical operations involved in the manufacture of phosphoric acid, an insufficient amount of sulphuric acid is sometimes used, with the result that a "needle" or monoclinic form of gypsum is not produced, but the crystals are in such cases generally "nodular" or broken up; that in reclaiming gypsum of this character the patentee introduces sulphuric acid which " * * * immediately attacks any basic, semi-basic and partially acted upon particles of fluoride in phosphatic combinations existing in the gypsum, and breaks them down into phosphoric acid, leaving also certain small amounts of free sulphuric acid and volatilization of some of the fluorine as hydro-fluoric acid gas."

The specification then further recites: "The next step in this method of treatment is the neutralization of whatever small amount of phosphoric acid is liberated, together with the excess of sulphuric acid added. I have found by practical experiments that this is best accomplished by the addition of finely divided hydrated lime into the acidic gypsum magma, thereby almost instantaneously forming mono-calcium phosphate and precipitated gypsum, also bringing down any small but non-volatilized hydrofluoric acid as calcium fluoride."

Appellant contends that the object of Edwards, as disclosed in said patent, is to neutralize the added sulphuric acid, while appellant's object in the use of lime is for the neutralization of phosphoric acid in the calcium sulfate sludge. However, Edwards clearly states that both phosphoric acid and sulphuric acid are present in the sludge treat-

ed by him, and appellant in his specification states that the calcium sulfate sludge treated by his process "contains some residual phosphoric acid and possibly sulfuric acid." Therefore we see no distinction between the purpose of appellant and that of Edwards in the use of lime as a neutralizing material.

Appellant further contends that the patentee, Edwards, in a paper read before the American Institute of Chemical Engineers, which paper is contained in the record before us, taught that lime could not be successfully used as a neutralizing agent on the initial gypsum slurry containing phosphoric acid. In said paper it is stated that: "Probably the most obvious and cheapest neutralizing agent to be used for this purpose was hydrated lime. Unfortunately, however, calcium oxide or hydrate has a retarding as well as a marked weakening effect on plaster of Paris manufactured from gypsum containing the lime salt, and on this account it could not be used. * * * *"

It appears from the record that this paper was read on June 26, 1925, while the application upon which the Edwards patent, 1,756,-637, was issued was filed on April 9, 1927, nearly two years after the date of said paper. It therefore appears that Edwards' later teaching was that lime could be successfully used as a neutralizing agent of phosphoric and sulphuric acid in the production of gypsum.

Appellant's second contention, as above noted, is that he uses chemical lime, which is produced at a temperature of about 900° F.

We agree with the Board of Appeals that no invention was involved in using chemical lime, the prior art having taught the use of lime as a neutralizing agent. The board upon this point stated: "This in our opinion amounts to no more than the selection of a good grade of lime."

With respect to the contention of appellant that the Edwards patent, 1,756,637, does not disclose the treatment of an initial calcium sulfate sludge, we would observe that only claim 1 refers to the treatment of an *initial* calcium sulfate sludge. With respect to this contention, it may be said that, strictly speaking, appellant does not disclose the treatment of an initial calcium sulfate sludge, for his specification recites that he begins with a calcium sulfate sludge containing sometimes as high as 5 per cent. acid. He then describes a step for the purpose of removing most of this acid, but states that a slight amount of acid will still remain in the product, and he uses the lime only after this step has been performed.

Moreover, while appellant omits one step in the process disclosed by the Edwards patent, 1,756,637, he also omits the function performed by that step. As hereinbefore stated, Edwards adds sulphuric acid to the sludge to correct any deficiency of acid originally used, in order to secure a better gypsum product. Appellant's process, however, would not secure the result obtained by Edwards in the treatment of a sludge in which an insufficient amount of sulphuric acid had been originally used.

If the initial calcium sulfate sludge treated was the result of a process in which there was no deficiency of sulphuric acid, then one skilled in the art would obviously omit the step disclosed by Edwards for the treatment of a sludge resulting from a process in which there was a deficiency of sulphuric acid.

█ It is well established that if the omission of an element is attended by a corresponding omission of the function performed by that element, there is no invention if the elements retained perform the same functions as before. Richards v. Chase Elevator Company, 159 U. S. 477, 16 S. Ct. 53, 40 L. Ed. 225; In re Trester, 36 F.(2d) 133, 17 C. C. P. A. 642.

With respect to the contention that the grinding of the calcined gypsum treated by appellant's process resulted in a new product which involved invention, we agree with the statement of the Board of Appeals, in denying appellant's request for reconsideration, that there is no invention in grinding a calcined material. It was pointed out by the examiner that in making plaster of Paris it is common to grind the product after calcining. Appellant claims that his product, before calcining, is as fine as is any ground calcined rock gypsum, and that his grinding of such product after calcining is new and inventive. It is sufficient to say upon this point that there are no limitations in the claims of this character, and they are broad enough to cover any ground calcined gypsum containing a phosphate, however produced.

With respect to appellant's contention that the excess of lime in the final product, equivalent to substantially two pounds per ton, resulted in a new product involving invention, we would observe that appellant's specification clearly discloses that his only purpose in the use of lime is to neutralize the acid in the product, and we think that Edwards teaches that sufficient lime should be used for that purpose.

Inasmuch as we are of the opinion that all of appellant's claims lack invention in

view of the reference Edwards, 1,756,637, we do not deem it necessary to discuss the other references upon which the board also rejected some of the claims.

The decision of the Board of Appeals is affirmed.

Affirmed.