49 CCPA
**Application of Harold R. LUCE.**
**Patent Appeal No. 6759.**

United States Court of Customs and Patent Appeals.
July 11, 1962.

Wesley B. Taylor, Oberlin, Maky & Donnelly, Cleveland, Ohio (Almon S. Nelson, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRK-PATRICK.[*]

WORLEY, Chief Judge.

Appellant seeks a patent on an "Automobile Floor Mat." His application[1] was rejected by the Primary Examiner as being obvious in view of the teachings of the prior art. The Board of Appeals affirmed. Appellant asks us to reverse.

The single drawing in appellant's application illustrates the device.

That drawing depicts what appellant says is "one of the various structural forms" covered by the single claim before us:

"7. A non-preshaped, flat molded, one-piece accessory automobile floor mat adapted to acquire the configuration of an automobile floor comprising two plane portions, an inclined toeboard portion contiguous with each such plane portion, and a central longitudinal hump located between such plane and toeboard portions, said mat comprising two substantially plane sections for covering the plane portions of the floor, an intervening section integral with and joining adjacent areas of said plane sections, said intervening section normally constituting a planar continuation of said plane sections but adapted for stretching snugly to enclose the hump of said floor and thereby become deformed to an arcuate shape while retaining said plane sections in a fixed position relatively to each other, each of the substantially plane sections having a further substantially plane section hinged thereto for angular relation therewith, said further plane sections thereby being spaced apart a distance approximately equal to the width of said hump and extended

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), title 28 United States Code.

1. Serial No. 587,618, filed May 28, 1956.

forwardly of the intervening section without connection therewith to enable said intervening section to assume the configuration of said hump without interference and to permit individual positioning of said further plane sections over a toeboard without interference with each other or any extension of said hump into said toeboard."

The only reference relied on below is:

Kravitz  2,505,554  April 25, 1950.

One embodiment of the floor mat of Kravitz is shown in the following drawing from that patent:

**Fig. 1**

The drawings show comparative constructions disclosed in the application and reference patent. They are both of flat single-piece construction, both made of a flexible material and both designed to provide a wrinkle-free floor mat for automobiles.

In his final rejection the examiner stated:

" * * * Applicant has done nothing more than delete the portion of the Kravitz mat that overlies the toe board hump section. The result achieved by omitting this portion of the mat is considered to be obvious and involves nothing more than choice of design."

In his "Answer" the examiner added:

" * * * Furthermore, it is well established that if the omission of an element is attended by a corresponding omission of the function performed by that element, there is no invention if the elements retained performed the same functions as before. In re Porter [68 F.2d 971], 21 C.C.P.A. 927; Richards v. Chase Elevator Company, 159 U.S. 477 [16 S.Ct. 53, 40 L.Ed. 225]; In re Trester, 17 C.C.P.A. (Patents) 642, 36 F.(2[d]) 133.

"The allowance of claim 7 would deny the public the privilege of tailoring flexible strip material to fit

the floor of a vehicle. Individual floor mats for covering the horizontal and inclined portions of a floor have been on the market for many years. Applicant has merely connected two such mats together by a piece of material covering the intervening humps. From another viewpoint applicant has added to a strip of material covering the hump and adjacent horizontal portions, two extensions to cover inclined floor portions. These alternatives point to the single conclusion that tailoring sheet material to fit portions of a floor, in the manner herein disclosed, involves, at best the skill of an expert upholsterer."

After detailed consideration of the arguments advanced by appellant in trying to distinguish his device over Kravitz, the board affirmed the examiner. Although the board was of the opinion "the claim reads on Kravitz both structurally and functionally," it further held appellant's mat would be obvious in view of Kravitz, stating:

"* * * we cannot escape the conclusion that, for example, an ordinary user of the Kravitz mat with or without any skill in the art of mats might without invention make two cuts in the mat of Kravitz and cut away the inclined section 24 if he found that the Kravitz mat gave difficulty with his particular car. Further, it is well known that floor coverings are commonly cut out so as to avoid interference from vertically rising protuberances. The inclined hump on a toeboard is in the nature of such a protuberance and the inventive faculties would not be involved in following the usual practice of users of floor coverings and cutting the mat to avoid interference from the hump. * * *"

It is unnecessary to consider whether appellant's claim does "read on" Kravitz since there can be no doubt that what appellant has done would be clearly obvious in view of Kravitz.

In asking us to reverse the board, appellant argues that the board applied a "hindsight" standard of invention, and stresses what is allegedly commercial success of his mat.

We see no merit in either contention. Indeed, it is difficult to imagine a more obvious step than that taken by appellant. We do not see how it can be seriously argued that appellant has done anything which would entitle him to the fruits of a patent.

Since there is no doubt that appellant's device is not patentable, normally it would be unnecessary to consider allegations of commercial success. We do so here only to express our surprise at the weight apparently accorded those allegations below.

The only evidence of commercial success is found in an affidavit by the president of the company to which appellant has assigned his application. Among the allegations affiant makes are: (1) the art had "literally struggled with the problem" allegedly solved by appellant; (2) appellant's mat met with "substantial and most favorable acceptance" by the public; and (3) appellant's mat has been "flagrantly copied and imitated" by competitors.

The only evidence in support of (1) is reference *in appellant's brief* to five patents. None of those patents was considered below or referred to in the reasons of appeal. 35 U.S.C. § 144.

In support of (2), affiant alleges he "produced," from January 1956 through September 1958, 253,384 mats. Assuming he actually sold all the mats "produced," it would not be improper to consider that figure in relation to a presumably potential market of approximately fifty-five million registered automobiles.[2]

In support of (3) affiant submitted thirteen exhibits "which are copies of

2. "The World Almanac and Book of Facts" for 1958, 1959 and 1960, published by The New York World-Telegram and Sun.

catalog sheets released by competitors." Those sheets, many undated, show various kinds of floor mats. However, we have no way of knowing from this record whether those mats were actually copied from appellant's device or were merely the exercise of the ordinary skill one would expect of those in the floor mat industry. Affiant's state of mind is one thing, but satisfactory proof of allegations is something else again.

The decision is affirmed.

Affirmed.