## HARDINGE BROS., Inc., v. MARR OIL HEAT MACH. CORPORATION et al.

Circuit Court of Appeals, Seventh Circuit.
July 6, 1928.

Rehearing Denied Sept. 25, 1928.

No. 3987.

1. Patents ⬥═⟹23—Omission of element of combination which defeats success of combination may be invention.

Omission of an element of a combination which does not contribute to success of combination, but prevents or defeats it, may be invention.

2. Patents ⬥═⟹328—1,158,058, for centrifugal oil burner, claims 2, 5, 10, held valid.

Patent No. 1,158,058, to King, for centrifugal oil burner, claims 2, 5, 10, held valid.

3. Patents ⬥═⟹328—1,158,058, for centrifugal oil burner, claim 1, as limited to cup of specification and to vertical burner, held valid.

Patent No. 1,158,058, to King, for centrifugal oil burner, claim 1, as limited to cup of specification and to vertical burner, which, though not stated, must be inferred from language of claim, held valid.

4. Patents ⬥═⟹328—1,158,058, for centrifugal oil burner, claims 1, 2, 5, 10, held infringed.

Patent No. 1,158,058, to King, for centrifugal oil burner, claims 1, 2, 5, 10, held infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Walter C. Lindley, Judge.

Patent infringement suit by the Marr Oil Heat Machine Corporation and another against Hardinge Bros., Inc. From a decree for complainants (20 F.[2d] 241), defendant appeals. Affirmed.

Lynn A. Williams, of Chicago, Ill., for appellant.

Thomas H. Sheridan, of Chicago, Ill., for appellees.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. The District Court (20 F.[2d] 241) held claims 1, 2, 5, and 10[1] of plaintiffs' (appellees') patent, No. 1,158,058, to King, for centrifugal oil burner, valid and infringed. The defenses were noninfringement and invalidity in view of the prior art.

───

[1] In a centrifugal burner, the combination of a casing open at its upper end, an open enlarged cup-shaped centrifugal atomizer, journaled in the casing, said atomizer having its open end projecting through the upper end of the casing, and means for introducing oil into the lower end of the atomizer.

2. In a centrifugal burner, the combination of a casing open at its upper end, an open outwardly flaring enlarged cup-shaped centrifugal atomizer, journaled in the casing, said atomizer having its open end projecting through the upper end of the casing and spaced from same, means for introducing oil through the lower end of the atomizer, and means for inducing an air current through the casing between the atomizer and casing.

5. In a centrifugal burner, the combination of a casing open at its upper end, an oil-delivering hollow standard, centrally disposed and secured within the casing, a sleeve revolubly mounted on said standard, an open cup centrifugal atomizer secured to the sleeve and projecting through the upper end of the casing, said atomizer and casing inclosing an air conduit, means for forcing an air current through the conduit, a collar mounted on the upper end of the casing, said collar in conjunction with the atomizer forming an annular discharge for the air conduit, and means for adjusting the position of the collar to increase or decrease the area of the annular discharge opening.

10. The combination, in a centrifugal oil burner, of a casing open at its upper end, a vertically disposed tubular shaft, journaled in the case, an open top cup fixed on the shaft constituting a centrifugal atomizer, said cup having an outwardly extending flanged lip overhanging the upper end of the casing and forming therebetween an air outlet, air induction means on the cup for creating an air current through said air outlet, an oil pipe extending through the hollow shaft and discharging into the bottom of the cup, and means for revolving the cup.

The prior art dates back to Cook patent, No. 73,506, issued in 1868. The Klein patent, No. 473,759, issued in 1892, and Eddy, No. 540,650, issued in 1895, are also relied on. In those three patents, the main feature was a cone-shaped rotating oil distributor, on the end of a horizontal shaft, inserted into the fire box. Those inventions did not come into general use, and, from the evidence, we conclude that, if burners of that type do come into general use, they must be based on principles not disclosed or involved in burners such as shown in the King patent, operating on a perpendicular shaft. In 1904, the United States Naval Liquid Fuel Board made a report, which it is urged disclosed some of the features of the King invention. No such burner was ever built.

The main reliance is on Becker, No. 1,-101,779, copending with King. For the purposes of this opinion, we shall consider Becker as relevant, and that King knew of the contents of the Becker specifications. For a better understanding of the King and Becker devices, Figures 1 of each patent are shown below:

izer 6, then out of the cup at 22', into the combustion chamber.

Defendant's main contention is that King did nothing more than to omit from his device the cap, or cover, shown above the cup 6 in Becker Figure 1. Plaintiffs' expert testimony is, for the most part, squarely contradicted by that of the defendant, so that the court is left to find its way about alone.

There are two things that seem quite clear from the evidence: (a) That the margin between success and failure in oil burners is very narrow; (b) that much expensive experimentation was carried on for many years, both by the plaintiffs and the defendant, before a successfully operating burner was devised. Plaintiffs did not succeed until they acquired the right to use and adopted the King device. Defendant did not succeed until it adopted what is here claimed to be an infringement.

Of the many difficulties encountered, we will refer to a few. For various reasons, the revolving cup required occasional cleaning, and the difficulty of doing that cleaning where there was a cap or cover, as shown in

In the King device (Fig. 1), the fuel passes from the duct 25 to the hollow shaft, or standard, 5, and then into the open cup centrifugal atomizer 7. Following the course of the arrows in the cup, it passes out of the cup, over the discharge flange 14, into the fire box, which is ordinarily the fire box of coal-burning furnaces. The shaft and atomizer are revolved by the mechanism 20 and the shaft 21. In the Becker (Fig. 1), the oil goes through the shaft 3, through the opening 11, into the centrifugal cup or atom-

Becker and a number of other patents, was one of the things that made expert servicing necessary. To accomplish perfect combustion, a proper air mixture and a flow of an air current along with the oil current as it passed over the flange of the atomizer, were very necessary things. Destructive heating of parts, so that they became warped and inoperative, had to be overcome.

Preliminarily, it may be said that the King device worked, and the Becker device did not. It seems clear that the removal

of the cover obviated to some extent the necessity for expert servicing. In Becker, the cup 6 broadened out at the top, but was not as wide as the top of the casing 19, so that the movement of the oil from the top of the cup, directed by the cover and centrifugal force, would be directly across the path of the upwardly moving current of air, forced by the fan 17 through the outlet 22. In King, the centrifugal force, independently of any cover, throws the oil in the direction of the arrows horizontally along the extended lip 14 of the cup 7, and that lip, extending over the top of the adjustable collar 15, causes the air, forced by the fan 9 through the opening 13, to go, not up through the oil current as in Becker, but to travel with the oil on a horizontal line. The tendency of the air current in King is to broaden the flame. The tendency of the air current in Becker is to break up the oil current and destroy the saucer-shaped flame.

Becker specified several advantages he thought would result from the use of his cover: (a) To protect the rotating parts from injury while being cleaned by careless operatives; (b) to protect the same parts from excessive heat; (c) to prevent liquid fuel from accumulating and becoming carbonized by radiated heat from the fire box when the burner is stopped. It does not appear that there was ever danger from (a), but that, on the contrary, the cover was a hindrance to necessary cleaning operations. The cover was not an aid, but rather a hindrance, to the solution of the difficulties (b) and (c).

The evidence shows that the film of oil, as it is thrown by rotation from the bottom of the cup out over the lip or rim, affords protection to the cup from heat during operation, and that when the burner is stopped the cover, by confining the heat within the cup, is a detriment. There is evidence of backfiring that injured the moving parts of the burner, which was eliminated by the removal of the cover.

[1] In view of the long and expensive experiments made by defendant and by King in their efforts to make a burner, with a cover on it, work successfully, defendant's urge that its removal was the obvious thing to do is not at all persuasive. The omission of an element of a combination, without retaining its function, is not invention. Yet, if the element does not contribute to the success of the combination, but prevents or defeats it, the omission of such an element

may be invention. The latter is what King did, although not all he did, over Becker.

Becker had no means by which the air current could be adjusted. King introduced the adjustable collar 15, controlled by the screw 16, to regulate the volume and velocity of the air current through 13. The omission of the cover must have resulted in considerable economy in manufacture. Becker says: "The upward direction of the fuel is very necessary, inasmuch as combustion does not take place at the point where the atomized fuel leaves the atomizing device. Experiments have shown that combustion takes place at a point from 4 to 6 inches from the point of discharge."

Speaking of the atomizer cup, King says: "The inner surface of the atomizer constructed as here shown is exposed to the radiated and reflected heat in the furnace. The thin film of oil passing up the wall of the cup is thus thoroughly heated, and is finally discharged over the edge of the cup into the furnace proper, having in its passage through the cup obtained the proper heat to immediately burst into flame when leaving the cup."

[2] The evidence is that this result was actually accomplished by the King device, and that the preheating of the oil in the manner described was one of the things contributing to the successful operation of the King burner. We have no question about the validity of claims 2, 5, and 10.

[3] Claim 1, if held valid, must be limited to the vertical atomizer of the specification; otherwise, it is open to the objection that it will read upon either Eddy, No. 540,- 650, or Klein, No. 473,759. Those were horizontal burners, and from the evidence we conclude that there is little probability that the King device would work successfully on a horizontal shaft. We are of opinion that, limited to the cup of the specification and to a vertical burner, which, though not stated, must be inferred from the language of the claim, claim 1 is valid.

[4] There seems to be little ground upon which to dispute the infringement. Defendant experimented through many years, with many devices, and always had a very poor measure of success until it adopted that which is here claimed are the material elements of the King device. Defendant uses the King method of taking the oil in at the bottom of the hollow vertical shaft, ending in a cup with an outwardly flaring top. Its rotating method is substantially the same as King's. Defendant's air current is produced by a fan attached to the central rotating

shaft. Although defendant's fan is up under the lip of the cup, still it will read on the King claims, and its function is the same as that of the fan in King. Although the King collar for regulating the quantity and velocity of air is not adopted by defendant as it is in King, yet defendant's device serves the same purpose and is a mechanical equivalent of King.

It is urged, and some of the testimony shows, that in defendant's device the oil, passing over the inside of the cup, was not preheated as in King; but it seems reasonably clear, from all the evidence, that there is no difference in that respect. Two former salesmen of the Hardinge devices testified that their sales talks were to the effect that the passing of the film of oil over the inside of the cup served, not only to keep the cup cool, but also to preheat the oil.

The decree is affirmed.