**WOLVERINE FABRICATING & MFG. CO., Inc., v. DETROIT GASKET & MFG. CO.**

No. 9798.

Circuit Court of Appeals, Sixth Circuit.

April 10, 1945.

Clarence B. Zewadski, of Detroit, Mich. (Clarence B. Zewadski and Whittemore, Hulbert & Belknap, all of Detroit, Mich., on the brief), for appellant.

John J. Darby, of Washington, D. C. (Cushman, Darby & Cushman, Max C. Louis, and Gorham F. Freer, all of Washington, D. C., on the brief) for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appellee filed an action praying for a declaratory judgment adjudging invalid

Kreuz Patent, 2,240,789, issued May 6, 1941, for sheet packing and gasket. Appellant counterclaimed, alleging infringement and praying for injunction and accounting. The District Court, after hearing, held all claims of the patent invalid for want of patentable novelty, granted the relief prayed for, and dismissed the counterclaim.

Appellee admitted in open court that it infringes if the patent is valid, and therefore the principal question is whether Kreuz discloses patentable novelty.

A gasket is a device used for packing in pistons, joints, or other parts of a machine. The claims in issue describe both the gasket and the gasket sheet material. Claims 2 and 4 are typical, and read as follows:

"2. A packing and gasket sheet material comprising, a base sheet of a chemically vulcanized fiber, said sheet being substantially incompressible and being resistant to deterioration by oil or the like fluids, and a relatively thin coating of synthetic rubber material applied on opposite faces of said sheet, said synthetic rubber material being resistant to deterioration by oil or the like fluids."

"4. A gasket comprising, a body or base formed of a chemically vulcanized fiber sheet which is substantially incompressible and resistant to deterioration by oil or the like fluids, and a relatively thin coating of oil-resistant synthetic rubber material applied to the seating faces only of said body to provide a resilient, compressible sealing layer on said seating faces."

The base material of the patented device is vulcanized fiber which has on both sides a "relatively thin" coating of synthetic rubber. In this combination of the two materials is alleged to reside the major improvement claimed to endow the conception with patentability.

Vulcanized fiber is made from cotton cellulose treated with zinc chloride so that the fibers are broken down into a homogeneous mass. All traces of the chemicals are washed out and the product is made up into sheets or rods. Vulcanized fiber is tough, highly resistant to oil, has high tensile strength, and is considered for practical purposes non-compressible. It has been used in the manufacture of gaskets since 1915. Synthetic rubber was invented about 1927, and its characteristics and uses were well known in the early 1930's. While the component materials are old, appellant contends that the Kreuz gaskets are the first to secure accurate alignment and spacing and to prevent leakage of oil in such parts as the oil pump cover. This, it urges, is due to the new combination of a base material inextensible, incompressible and tough, with a coating of synthetic rubber which is both oil-resistant and somewhat compressible, thus adjusting itself to the irregularities of the metal surfaces and making an oil-tight seal.

Synthetic rubber had been used in gaskets about a year before the Kreuz application, and natural rubber treated to make it oil-resistant had been used in gaskets commercially even before that time. Many gaskets of vulcanized fiber had been commercially used from 1934 on, such as the cylinder to crankcase gasket, gaskets for steering and worm gears and radiator cap gaskets. The vulcanized fiber was valuable in helping to solve problems of alignment and spacing because of its toughness and non-compressibility. Used alone, however, without some yielding material, it was not practical for parts where a tight seal must be secured between the surface of the vulcanized fiber and the adjacent metal surfaces. This problem had been recognized for years in the art.

Kreuz, who was employed by appellant, was assigned the problem of securing a gasket that was oil-resistant and a precision spacer. About June 8, 1938, he conceived the idea of coating vulcanized fiber with synthetic rubber, and filed an application for a patent upon this idea February 23, 1939. His device was submitted to the Chrysler Corporation, and became the basis of that corporation's material standard for gaskets to be placed between ground metal surfaces, where a hard material was necessary for maintaining alignment and spacing, such as the attachment of the transmission extension, the overdrive housing adapter or the oil pump cover. Chrysler's staff engineer testified that in performing this service the Kreuz type of gasket was valuable and its utility and commercial success cannot be questioned under this record.

Kreuz's application for patent was refused by the patent examiner, but was later allowed by the Board of Appeals. However, we think that the District Court correctly held the patent invalid. In reversing the patent examiner, the Board of Appeals commented that none of the references disclosed "applying yielding surfaces to a hard vulcanized fiber base which

is resistant to the fluids which will contact it." But this record presents testimony of various prior uses, and at least one patent not considered by the examiner nor by the Board of Appeals, which present the precise feature stated by the Board to be lacking.

Appellant contends that one of the essential elements of the claimed invention is that it permits the manufacture of gaskets much thinner than was possible before. The thinness of the gasket and of the sheet material is neither defined nor claimed in the patent, and if the thinness is critical, the patent is invalid for failure to define the proper thinness of the materials. Timken Detroit Axle Co. v. Cleveland Steel Products Corp., 6 Cir., 148 F. 2d 267. But we do not consider that the validity of the patent depends upon this feature.

Nor do we consider it important that Kreuz does not cover the edges of his vulcanized fiber with Thiokol, which is his preferred form of synthetic rubber. Whether the base material is covered with sheets of Thiokol, dipped so as to completely cover the edges, or dipped in sheets and then cut, leaving the edges uncovered, depends upon the use to which the particular gasket is to be put and the relative economy of the operation. It is shown in this record that before Kreuz it was common practice to use such different processes of coating as were efficient in view of the gasket desired. We do not consider this question further.

The evidence of the prior uses in gaskets of vulcanized fiber together with oil-resistant rubber or synthetic rubber is strong, and conclusively establishes that there was no invention in Kreuz. In 1936 the Ford Motor Company used a condenser sealed with a disk of vulcanized fiber covered with rubber. As originally submitted to Ford, this condenser had no rubber coating and oil leaked through the fiber disk. The head of the electrical laboratory of the Ford Company testified that Ford tried the condensers without the rubber on the vulcanized fiber approximately three months and that then, in order to prevent leakage, Ford had the manufacturer of the condenser apply a rubber surface to the vulcanized fiber. The appellant contends that this prior use has no bearing upon the controversy because the only reason vulcanized fiber was used in the condenser was because of its dielectric qualities, and because of its

capacity to reenforce the otherwise fragile zinc condenser. But Ford's expert testified that the function of the vulcanized fiber was to "form the seal and the support for the center electrode." He also stated that the purpose was to form "a seal for the oil."

A report upon these condensers, made by Ford's experimental department, dated November 10, 1936, stated that the object of the test was "To determine the capacity, dissipation factor, insulation resistance, oil seal, dielectric strength, mechanical strength, and the construction of sample distributor condensers." One of the results of the test given in the report was "Oil leaks:—None." In face of this disinterested report, appellant's contention that the experience with this condenser has no relation to the problem of oil leakage cannot be sustained. Also it is significant that the problem on which Kreuz worked for many months was solved by the electric expert of the Ford Company in three months as an ordinary problem within the scope of the art.

The Pyle prior use is not named in the proceedings in the Patent Office. It was conclusively established by oral and written testimony and the reports, material standards and inter-office communications of the Chrysler Corporation. In 1937 Harold Pyle, working for Chrysler, was assigned a problem identical with that of Kreuz, namely, that of securing a gasket which would form a leak-proof seal between the parts of an engine which are exposed to lubricating oils at relatively high temperature. Pyle applied synthetic rubber to two forms of fiber bases, one a chip board base and another a harder base of fiber board, each of which had been treated to lessen its permeability to oil. Pyle filed an application for a patent, later abandoned, in which he stated that one of the objects of the invention was to provide a "film coating for gasket body parts which adheres thereto and which yieldably conforms to the surfaces of the parts of a structure between which it is disposed in order to effectively seal the joint therebetween." He recommended Thiokol and Neoprene as being suitable for this purpose. Pyle's device went into commercial construction for Chrysler in 1938, and is still used by Chrysler for numerous types of gaskets. An inter-office report made in June, 1938, with reference to the Pyle gasket, after calling attention to the fact that it is very troublesome to get a seal between

402

the block and the chain case cover plate, states: "Excellent results have been had with a Thiokol gasket. This type of gasket is very suitable in this location due to its ability to adapt itself to irregularities in assembly. Quite a number of these have been run in production with satisfactory results. We feel we shall have had enough experience to use this on the 1939 models. It might be well to mention in this connection that the two engines equipped with Thiokol gaskets were recently run in Arkansas and were 100% free from oil leaks which is the first time we have been able to achieve this condition and reflects the results of approximately a year of work in attempting to seal various points around the engine."

The Sprague Specialties Company in 1938 manufactured and sold considerable quantities of gasket material, consisting of a base of vulcanized fiber and a thinner layer of rubber composition which was oil resistant. The rubber was coated on the fiber by the Hood Rubber Company, sometimes on one side and sometimes on both sides of the fiber.

The Synthane Corporation of Oaks, Pennsylvania, prior to 1938 manufactured gaskets with a core of Bakelite coated on both sides with relatively thin sheets of natural rubber for the purpose of providing seating or sealing surfaces. Bakelite is a cellulose fiber treated to secure strength and durability, having many of the same characteristics as vulcanized fiber. Thiokol has many of the characteristics of natural rubber, but is superior for gasket use over natural rubber in that it does not deteriorate in the presence of oils.

The patent to Emanuel, 2,076,401, employs a gelatinous binder which forms the base of the composition and a filler which contains a tanning agent such as cork flour. The specification states that a re-enforcing layer has been found desirable in some types of gaskets, and suggests the use of vulcanized fiber for that purpose. This patent was not cited in connection with Kreuz's application. It discloses the application of "yielding surfaces to a hard vulcanized fiber base which is resistant to the fluids which will

contact it," which the Board of Appeals in effect held did not exist prior to Kreuz. The District Court correctly held that under these circumstances the presumption of validity arising from the granting of the patent to Kreuz is weakened because the Board of Appeals did not have before it the most pertinent prior art. France Mfg. Co. v. Jefferson Electric Co., 6 Cir., 106 F.2d 605, cert. denied, 309 U.S. 657, 60 S.Ct. 471, 84 L.Ed. 1006; Western Auto Supply Co. v. American-National Co., 6 Cir., 114 F.2d 711.

Kreuz unquestionably made an advance by employing vulcanized fiber with synthetic rubber for the particular gaskets desired. But the characteristics of these materials were well known. Each of them had already been used in the gasket art. There was no invention in substituting one material, vulcanized fiber, for another material chip board, fiber board or Bakelite, or in substituting Thiokol for natural rubber. Timken Detroit Axle Co. v. Cleveland Steel Products Co., supra. We think this conclusion is strengthened by the fact that it was the practice in the gasket art, as shown by witnesses for both parties, to adapt the material to the specific application. If non-rigid stampings are being fastened together and the variations in space between the two parts is considerable, a relatively soft base material, such as cork, is employed. When rigid surfaces are involved for purposes of alignment and spacing the base material must be hardened, and this general policy is followed in the manufacture of all gaskets. Therefore it did not amount to invention to select a known hard fiber and use it as a spacer and maintainer of alignment between rigid metal surfaces. Nor did it amount to invention to combine with this known hard fiber a second known material which had already been employed for this same purpose in gaskets, and to seal the leaks resulting from the non-conformity of the vulcanized fiber to the metal surfaces, with a known compressible and resilient material such as Thiokol. This was fairly to have been expected from the skill of the art, and no patentable invention was involved.

The decree is affirmed.