**CLARK et al. v. ACE RUBBER PRODUCTS, Inc. et al.**

Civ. A. No. 25995.

United States District Court
N. D. Ohio, E. D.

Sept. 22, 1952.

B. D. Watts (of Richey & Watts), Cleveland, Ohio, for plaintiff.

Albert L. Ely, of Akron, Ohio, for defendant.

McNAMEE, District Judge.

Plaintiffs are the owners of patent 2,436,139, which was applied for April 6, 1946 and issued February 17, 1948. They bring this action for infringement. Defendants deny infringement and assert that the patent is invalid. They also allege that plaintiffs do not come into this court of equity with clean hands and urge dismissal of the action on that ground.

The alleged invention consists of a unitary molded rubber mat designed to cover both the tread and riser portions of stairs or steps. Plaintiff James C. Clark is the inventor and owner of a two-thirds interest in the patent. Plaintiff Donald Gottwald is the assignee of a one-third interest therein.

Two claims were allowed, but the alleged infringement is of claim 1 only, which reads as follows:

"A molded rubber stair mat comprising a portion for lying flat on a horizontal stair tread, a portion for lying flat against a vertical stair riser, and a portion between said tread and riser engaging portions to lie close to the front edge and underside of said tread and having a groove in its outer surface along which the mat may bend to fit into the angular space at the intersection of the tread and riser, said riser portion being long enough to wedge between adjacent stair treads whereby the mat may be positioned and maintained in snug engagement with the riser and bead of the stair."

The product has been a commercial success. From March, 1946 to March, 1952 plaintiffs' licensee, the Crown Rubber Company, has sold between three and one-half to four million of the patented mats at a total sales price of approximately two million dollars and paid royalties to plaintiffs in an amount estimated between ninety-five and one hundred thousand dollars. For the most part, these sales have been made without advertising other than "envelope stuffers," to Sears, Roebuck & Company, Montgomery Ward & Company, and the retail stores of the Goodyear, Goodrich, and Firestone Tire & Rubber companies.

It is conceded that none of the references to the prior art were anticipations of plaintiffs' alleged invention. It is the claim of defendants, however, that in the years 1934 to 1940, inclusive, a rubber molded stair mat substantially the equivalent of the patented mat was manufactured and sold by the then licensees of plaintiffs and that such predecessor mat was either in full anticipation of the product here claimed to be infringed or that such improvement as there may be in the patented mat is the result of mere mechanical skill. The facts upon which this claim rests are as follows:

Sometime in the year 1934 Clark conceived the idea of a stair mat of rubber and fabric construction to cover the tread and riser portions of stairs or steps as a cheaper and more efficient substitute for carpet and other stair coverings then in use. His original concept was of a mat consisting of two separate pieces of rubber spaced apart, with a piece of fabric coextensive with the pieces of rubber and vulcanized to them. The fabric covered the entire back of the unitary structure and formed a hinge between the separate pieces of rubber, which was designed to permit the mat to be fitted into the angular space between the underside of a step and the front side of the riser below it. Clark applied for a patent on this mat under application No. 711,717. He disclosed his idea to the Trump Rubber Company, who agreed to manufacture and sell the mats and pay Clark a royalty therefor. Clark thereupon became an employee of the Trump Rubber Company and was charged with the duty of supervising the manufacture of these mats. Meanwhile he prosecuted his application for a patent. The application was twice rejected and, apparently because of the bankruptcy of the Trump Rubber Company in 1935, was finally abandoned in March, 1936.

Clark testified that none of the mats described in application No. 711,717 were sold while he was employed by Trump. During the period of that employment, however, Clark devised a second mat, hereinafter referred to as Exhibit A, which was manufactured and sold by Trump. The second mat (Exhibit A) differed from the first in that it was a unitary molded mat consisting entirely of rubber except for a two-inch strip of fabric imbedded in the under-surface across the back of the groove which lies between the tread and riser portions of the mat. Several of these Exhibit A mats were sold by Trump, the precise number being unknown.

The Ace Rubber Company succeeded to the business of Trump after the latter's bankruptcy and continued Clark in its employ under the same royalty agreement the latter had with Trump. Between the years 1936 and 1940, inclusive, more than two thousand of these mats with the strip of fabric on the back were sold by the Ace Rubber Company. The number of mats sold annually was as follows: 1242 in 1936; 675 in 1937; 245 in 1938; 24 in 1939; 83 in 1940.

The defendants made an effort to show that the Ace Rubber Company manufactured and sold mats with the strip of fabric

omitted, but the weight of the evidence is the other way. It is clear that all the mats sold during the years prior to the war had a strip of fabric on the back. The function of the fabric strip was to reinforce the rubber at its point of greatest strain and to prevent cracking and tearing at that point.

Clark received royalties on these sales made by Ace. Two cancelled checks in evidence, dated December 8, 1936 and June 23, 1938, in the respective amounts of $12.50 and $13.47, represent royalty payments made by Ace to Clark.

Although it was represented that there was an application pending for a patent on Exhibit A, there was no application for a patent on this mat. With the advent of the war and the restrictions upon the use of rubber, the manufacture and sale of Exhibit A mats was discontinued.

Upon the termination of the war Clark entered the employ of the Crown Rubber Company. At that time he devised the mat which is the subject of the patent in suit. As indicated, the patented mat is made entirely of rubber, the reinforcing fabric strip used on the predecessor mat being omitted. The omission of the fabric strip represents the only important difference between the patented mat and Exhibit A. A light weight and inferior grade of rubber was used in the manufacture of Exhibit A. By using a "better stock" and "thicker stock" it was practicable to remove the reinforcing fabric strip.

In his direct testimony Clark stated that Exhibit A was difficult to bend at the groove so as to fit snugly into the angular space between the under surface of the stair and the front surface of the riser below, and that such mats could be made only in single cavity molds of short life, capable of producing not more than 25 to 50 mats. He stated that the all-rubber patented mat can be made in gang molds in which two to four mats are molded simultaneously and which have a life of from 1000 to 1500 mats. In explanation of the purpose sought to be accomplished by the omission of the fabric strip Clark said: "I was trying to get the mat where we could make them in production, and make more than one at a time and still retain the strength here. So I went to

a heavier mat, a better grade, and made some of these and tested them up there for quite a long time to see if they would hold up." When asked on cross-examination to tell the differences betweeen Exhibit A and the mat covered by the patent, Clark attempted to indicate a difference in the distance from the groove of the mat to the lower edge of the riser. But upon examination the Exhibit A mat in evidence and the patented mat were both found to have a distance of six inches between those points. In answer to the question—"What other difference is there between Exhibit A and the article you are now making under the patent?" he answered: "I took the fabric off." He further stated that he omitted the fabric to reduce the cost of production.

Shortly before the patent issued Clark filed an affidavit with the Patent Office which, among other things, contains the following statement:

"Prior to the time the present invention was made, stair covers of rubber composition were made in only two types or styles, so far as I know. One type or style was a plain flat piece of rubber composition which was laid only on the top surface of the stair tread and did not extend around the front edge or bead of the tread nor along the riser. The other type was like the first type except that at its front edge the rubber pad was bent to extend down along the front side of the stair tread. Prior to my invention, no one so far as I know, had ever made a molded rubber stair cover comprising both tread and riser covering parts."

Defendants claim that this affidavit was false in the statement that "Prior to my invention, no one so far as I know, had ever made a molded rubber stair cover comprising both tread and riser covering parts." This is the basis of the defense of "unclean hands" which will be hereinafter discussed. The undoubted effect of the foregoing statement was to persuade the Patent Office that the mat for which a patent was sought was a pioneer rubber mat covering both tread and riser parts of the stair. This was contrary to the fact,

and the patent was granted without knowledge by the Examiner that similar mats with a reinforcing fabric strip on the back had been manufactured and sold for several years before the filing of the application in 1946.

Several months after the patent was granted, one of the officers of the Ace Products Company asked Clark for permission to manufacture and sell the patented mat. Clark refused permission. Thereupon the defendants commenced the manufacture and sale of Chinese copies of the patented mat, and in the period from August, 1948 to November, 1949 they made and sold over thirty-four thousand of these mats. There is adequate proof to sustain the claim of infringement if the patent is valid.

■ Plaintiffs argue that Exhibit A was a failure and abandoned. Relying upon the maxim "Success cannot be anticipated by failure," they urge that the predecessor mats cannot be considered as part of the prior art. This argument is not supported by the evidence in the record. True, mats with the strip of fabric on the back were manufactured and sold in limited quantities, but their manufacture and sale continued over a period of about six years under license agreements with two companies. There is no evidence that during that time Clark or anyone else attempted to improve the mat or correct any defects therein. There is no evidence of failure of the mat to perform the function claimed for it, and no evidence of complaints from purchasers or of the return of a mat by a dissatisfied customer. And the evidence is undisputed that the manufacture of Exhibit A was discontinued by reason of the war restrictions upon the use of rubber. There was no abandonment. The evidence discloses a widespread public use of the mats during the years preceding the war. It is my opinion that Exhibit A was the most pertinent part of the prior art. The presumption of validity arising from the granting of a patent is therefore weakened. As was said in Wolverine Fabricating & Mfg. Co. v. Detroit Gasket & Mfg. Co., 6 Cir., 148 F.2d 399, 402:

"* * * the presumption of validity arising from the granting of the patent to Kreuz is weakened because the Board of Appeals did not have before it the most pertinent prior art."

See also France Mfg. Co. v. Jefferson Elec. Co., 6 Cir., 106 F.2d 605; Western Auto Supply Co. v. American-National Co., 6 Cir., 114 F.2d 711.

■ Plaintiffs claim that the patentability of their mat lies in a "riser covering portion long enough to wedge between the stair treads adjacent above and below the riser." If it be conceded that the above-described portion of the patented mat is longer than the same portion of Exhibit A, the claim of patentability must nevertheless fail as embracing a change merely of proportion and degree.

"A mere change in an existing means involving a difference only in form, proportions, size, or degree, ordinarily does not constitute invention, at least where it involves doing substantially the same thing in the same way, by substantially the same means, although with better results". 69 C.J.S. Patents, § 56, pp. 276–277, and cases cited.

See also Streit v. Kaiper, 143 F. 981; In re Corbett, 142 F.2d 78, 31 C.C.P.A., Patents, 1077; Dykema v. Liggett Drug Co., 2 Cir., 94 F.2d 648.

■ The fact that the omission of the fabric may render the mat more flexible does not constitute invention. Nor does the fact that the omission of the fabric makes possible the manufacture of mats in gang molds, thereby reducing the cost of production, establish that the patented mat is the result of invention. Plaintiffs' patent is not for a process of manufacture, and the effect of the increased production through the use of multiple molds upon the product is only to reduce its cost. But, as said in Rid-Jid Products, Inc. v. Rich Pump & Ladder Co., 6 Cir., 103 F.2d 574, 578:

"Perfection of workmanship resulting in more convenient and increased use, or less expense of production, does not achieve patentability."

The same principle is declared by the Eighth Circuit Court of Appeals in Hudson Mfg. Co. v. Standard Oil Co., 60 F.2d 377, 379, where the court said:

"Even if the * * * device was crude and imperfect in construction, it obviously was operable, and its crudeness and imperfections in form and structure would not render valid a subsequent patent for a device embodying the same generic principle."

It is settled law that the omission of an element with a corresponding omission of its function does not constitute invention. Richards v. Chase Elevator Co., 159 U.S. 477, 16 S.Ct. 53, 40 L.Ed. 225. Plaintiffs seek to overcome the effect of this rule by applying the exception to it which holds that if an element does not contribute to the success of the combination but prevents or defeats it, its omission may be invention. See Harding Bros., Ins. v. Marr Oil Heat Mach. Corp., 7 Cir., 27 F.2d 779. However, the evidence here does not support the view that the fabric strip defeated the operability of the Exhibit A mats. Patentability requires something more than the achievement of an improved result or the development or elaboration of an original idea.

No purpose would be served in citing or quoting from the many cases which comment upon the distinction between invention and mere mechanical skill. It will be sufficient to note the observation of the Court of Appeals of the Sixth Circuit in O'Leary v. Liggett Drug Co., 150 F.2d 656, at page 660, that

"* * * we must recognize as have other courts and our own 'the high standard demanded for invention by the decisions of the Supreme Court in recent years'".

And this further pertinent comment in that opinion:

"To be the inventor of a patentable device, however, one must exercise more ingenuity than a mechanic skilled in the art; must do more than utilize the skill of the art in bringing old tools into new combinations; and must produce a device which is not merely an advance indicated by prior art, but is the result of invention and not of a mere exercise of the 'skill of the calling.' Perfection of workmanship, though greatly increasing convenience, extending use, or diminishing expense, is not patentable. The contribution of the inventor must reach the level of inventive genius which the Constitution authorizes Congress to reward. These principles have been stated by the Supreme Court in Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U. S. 84, 62 S.Ct. 37, 86 L.Ed. 58."

When the stair mats were made of an inferior grade of rubber the fabric strip served a useful function in reinforcing the rubber at the point where it was most likely to crack or break. With the use of a better grade of rubber in the manufacture of the patented mat such reinforcement became unnecessary. The simple expedient of using a better grade of rubber and thereby obviating the need of the reinforcing fabric can hardly be said to constitute invention. It was held in In re Fischer, 58 F.2d 1060, 1062, 19 C.C.P.A., Patents, 1291, that "ordinarily the omission of reinforcing devices from a structure does not involve invention." More to the point is In re Butterfield, (1904), C.D. 585, 23 App.D.C. 84, where the Court of Appeals for the District of Columbia held:

"Where a prior patent shows a rubber sole vulcanized to the inner sole with an interposed layer of rubber-coated cloth, *Held,* that the omission of the cloth does not involve invention, but mere mechanical skill."

Phillips patent 1,422,887, which is one of the references in the cited prior art, shows an all-rubber mat with a groove molded at the line where the mat is bent to conform to the surface to which it is attached with no fabric reinforcement at the groove.

In Paine & Williams Co. v. Trump Products Co., D.C., 18 F.Supp. 103, 106, Judge West of this court said:

"Curing rubber upon fabric was certainly old, and there can be nothing novel in the partially embedded burlap of the rubber mat."

There being no novelty in curing rubber on fabric, the omission of a reinforcing fabric strip from a product made of rubber presents no innovation displaying the exercise of the inventive faculty.

It is held, therefore, that such improvement as there may be in the patented mat over the Exhibit A mat is the result of mechanical skill and that claim 1 is invalid.

■■■■ There can be little doubt that Exhibit A was an anticipation of the patented mat. If Exhibit A were manufactured and sold now it would constitute infringement of the patent. If by reason of the use of an inferior grade of rubber a reinforcing fabric strip was imbedded therein, a mat so constructed would be the substantial equivalent of the patented product. Infringement would not be avoided by the addition of the fabric strip. The maxim "That which would infringe if later anticipates if earlier" applies. In Hartford-Empire Co. v. Swindell Bros., Inc., 4 Cir., 96 F.2d 227, 231, it was held:

"Infringement is not avoided either by impairment of function or by the addition of elements to the complete structure of the patent claims."

See also United States Rubber Co. v. General Tire & Rubber Co., 6 Cir., 128 F.2d 104; 69 C.J.S., Patents, § 297, p. 866.

Plaintiffs' argument in support of the validity of the patent rests heavily upon the omission of the fabric strip. But neither in the specifications nor claim of the patent is there any claim of novelty in the omission of the fabric.

■■■■ Plaintiffs also rely upon commercial success to establish validity. No citation of authority is necessary to support the oft-stated principle that commercial success cannot overcome the want of invention.

■■ Defendants' request for the allowance of attorneys' fees requires brief discussion of the defense of "unclean hands" which is based upon defendants' claim that the affidavit filed by Clark with the Patent Office was false in the representation that "Prior to my invention, no one so far as I know, had ever made a molded rubber stair cover comprising both tread and riser covering parts." Although the making of the above-quoted representation to the Patent Office may arouse suspicion that it was made with intent to deceive, the evidence upon this aspect of the case is such as to persuade me that a finding to that effect is unwarranted. The affidavit was prepared by a reputable patent attorney who had no knowledge of the manufacture and sale of the Exhibit A mats in the years prior to the war. Plaintiff Gottwald, who acted as personal counsel for Clark, likewise had no knowledge that the Exhibit A mats superseded the original mat described in Clark's patent application No. 711,717 and that Exhibit A mats were made and sold. Clark explains the above-quoted statement by saying that he thought the words "no one" meant no one other than himself. On its face this may not seem to be an entirely satisfactory explanation, but considering that except in the years 1939 and 1940, Clark supervised the manufacture of the mats sold by Trump and Ace, it may well be that he considered his representation to have been a truthful statement. At least it cannot be said that the evidence is so clear and convincing as to warrant a finding that Clark deliberately intended to deceive the Patent Office.

Defendants' application for allowance of attorneys' fees is denied.

The complaint is dismissed at plaintiffs' costs.

An order may be prepared in accordance with the foregoing.