**DARISON CORPORATON, James W. Fitzgerald, William C. Winder, and George Roy Ringo, Plaintiffs,**

**v.**

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 3222–57.**

United States District Court
District of Columbia.

April 6, 1960.

Allen Kirkpatrick and James L. Dooley, Washington, D. C., for plaintiffs.

George L. Roeming, Washington, D C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents under Section 145 of

Title 35 of the United States Code to secure an adjudication that the plaintiffs are entitled to receive a patent on an invention as to which an application was denied by the Patent Office. The application in question was filed on February 27, 1950 by the three individual plaintiffs and assigned to the corporate plaintiff, Darison Corporation. It is Number 146514. The alleged invention is a method for testing milk.

In the processing and distribution of milk it is continuously necessary to test the composition of milk as to the proportions of butter fat and non-fat solids contained in it. Such tests are required for a number of purposes, among them to determine the price to be paid for the milk and also to ascertain whether the milk complies with requirements of law and for other objectives. For many years various chemical tests have been used for that purpose. A test by an apparatus known as a hydrometer has also been employed. All of these tests required time and, therefore, were somewhat expensive.

The testimony shows that the industry had been looking for a test by means of some sort of an electrical indicator and that from time to time various means were tried by the use of electrical conductivity, light waves and other devices, but none of them was found successful. The plaintiffs introduced the idea of utilizing sound waves for that purpose. In a general way, their process consists of generating sound waves, passing them through the container in which is found the sample of milk to be tested, and registering the velocity of the wave. The velocity varies in proportion to the solids found in the milk. The testimony also shows that this process has been accepted in the dairy business and is an improvement over prior methods, because these tests can be conducted instantaneously and do not require an undue consumption of time.

It seems clear that the inventors in the case have made a substantial contribution to the milk industry by utilizing and harnessing the procedure that has just been outlined for the purpose of testing milk. There seems to be no doubt that resourcefulness and ingenuity on their part was involved. This circumstance, however, is not in and of itself sufficient to justify the issuance of a patent.

When the application was pending in the Patent Office, a number of narrow specific claims were allowed. Broad generic claims were rejected and they are the claims, with one exception, that are involved in this suit. The claims pressed before the Court at this trial are claims 33 to 42 and claims 44 to 46, inclusive.

■ The patent laws do not reward with a long-term monopoly every new contribution made to an industry. There are many valuable advances that have not been so recognized. Perhaps a striking illustration is the case of "dry ice", a product very well known on the market and familiar to the public. There is no doubt that dry ice was an important contribution to the industry in which it is used. So, too, it was a novelty. But no patent was allowed on this development, largely because the persons who devised dry ice resorted to a well-known laboratory formula that had never previously been used commercially. Carbice Corporation of America v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, and 283 U.S. 420, 51 S.Ct. 496, 75 L.Ed. 1153. In order to justify the issuance of a patent and to receive the monopoly that the patent confers, the contribution and advance made by the applicant must be the result of the inventive faculty.

Judge Learned Hand, in Ruben Condenser Co. v. Copeland Refrigeration Corp., 2 Cir., 85 F.2d 537–541, in his usual inimitable language, said:

"Possibly the patent law should protect such industrial achievements, but it does not; the work of the well-equipped laboratory which by trial and error checks off a series of formulas, may be the proper path of industrial advance, as the Germans found it to be before the Great War; but it does not demand what we call

'invention'. Something more personal to the inventor, something which better measures his imaginative powers, is required."

This statement has been quoted with approval by the Court of Appeals for this Circuit, Rembert v. Coe, 78 U.S. App.D.C. 51, 136 F.2d 793.

In somewhat more prosaic language the pertinent statute Section 103 of Title 35, provides that a patent may not be obtained, though the invention is not specifically disclosed or described as set forth in Section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matters pertain.

The Patent Office showed that the use of sound waves for testing the composition of liquids by means of measurement of the velocity or attenuation of sound waves after they pass through the liquid to be tested was described in a scientific treatise written by Bergman and entitled "Ultrasonics", which was published in 1938. In addition, the Patent Office relied on a patent to Blanchard, Number 2573390, issued on October 30, 1951, which disclosed a method of testing the presence of gas in the drilling mud of an oil well by the transmission of compressional wave energy through the mud stream. In other words, the use of sound waves for the testing of liquids by means of transmitting the sound waves through the specimen to be tested and measuring their velocity or attenuation has been known. What the inventors did in this case was to apply this method to the testing of milk, which had not been previously done. The ultimate question, then, is whether this step constitutes a creation of the inventive faculty or a product of mechanical skill. The Patent Office held it was a handiwork of mechanical skill. The Court agrees.

■ It is well established as a basic principle in the patent law that a new use of an old process or device is not patentable if the new use be so nearly analogous to the former one that the new applicability would occur to a person possessed of ordinary mechanical skill. Potts v. Creager, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275. It is indeed true that if the relations between the old and the new use be remote, it may involve an exercise of the inventive faculty. It is significant to note, however, that the Supreme Court italicizes the word "may" and does not use the word "must" or "does".

The manner in which this invention was made casts a certain degree of illumination on this subject. In answer to a question propounded by the Court, one of the inventors, who is a chemist specializing in the chemistry of milk, testified that he was informally discussing the problem of devising a new test with one of the other inventors, who was a specialist in ultrasonics, and that the latter suggested that the well-known ultrasonic process might possibly be applicable in the case of milk. This led to the development of the new process or, rather, to the application of the process to the testing of milk. It is earnestly urged by able counsel for the plaintiffs that this step was invention. But it seems to the Court that a person familiar with the art of testing would, in the exercise of the ordinary skill of the art, think of the idea of applying a well-known process to the testing of a new type of material.

In this connection, it may be of some significance, at least, that the art with which we are dealing is not the art of manufacture or production of milk. It is the art of testing liquids. Consequently, the publications on which the Commissioner of Patents relied belong in that sense to the same art as that with which the present alleged invention is connected. In the Patent Office the application here involved was not classified in any art relating to the milk industry. Similarly the application resulting in the Blanchard patent was not allocated to any art relating to oil wells or gases. Both were placed in the same category, namely, the class entitled "Measuring and

516

Testing". While, of course, the classification of the Patent Office is not conclusive, nevertheless it does throw a considerable light on the question whether the new use is in a non-analogous art. Evidently, and with good reason, the Patent Office answered this question in the negative.

█ The Court concludes, therefore, that the broad claims do not involve invention in the light of the prior art and that the step taken by the inventors in this case, commendable and valuable as it was, does not lie in the field of invention as defined by the patent laws.

█ There is another ground why the broad claims were rejected. A typical claim is claim 33. It reads as follows:

"The method of determining the solids-not-fat content of a milk or milk product containing fat which comprises, subjecting a portion of said milk or milk product to conditions whereby to determine its fat content, subjecting said portion to conditions whereby to determine its temperature, propagating a sound wave through said portion while avoiding any substantial chemical or physical modification of the milk system and measuring a propagation constant of said sound wave with reference to said fat content and said temperature as an index of said solids-not-fat content."

The first element of the process, according to the claim, requires "subjecting a portion of said milk or milk product to conditions whereby to determine its fat content." What conditions, or conditions of what type, is not indicated in the claim. The same is true of the next element of the claim. These claims are too indefinite to justify their allowance.

█ The Court is of the opinion that the foregoing discussion, however, does not apply to claim 38. Claim 38 is a narrow specific claim similar to other specific claims which have been allowed by the Patent Office.

Accordingly, the Court will render judgment for the defendant on all claims except claim 38, and will render judgment for the plaintiff on claim 38.

Government counsel will please submit proposed findings of fact and conclusions of law, and a proposed judgment.

The Court is indebted to counsel for both sides for their very able and helpful presentation of this case.