Anders C. OLSEN and Neslo Manufacturing Corporation, Plaintiffs,

v.

UNITED STATES GYPSUM COMPANY and Expanded Metal Engineering Company, Defendants.

Civ. A. No. 16074.

United States District Court
E. D. New York.

Dec. 29, 1960.

issued January 12, 1943, on an application filed on January 23, 1940, and of U.S. Patent No. 2,307,899, issued January 12, 1943, based on an application filed October 13, 1941; both patents are entitled "Building Structure". Both patents were issued to the plaintiff, Anders C. Olsen, who, in turn, granted an exclusive license thereunder to Neslo Manufacturing Corporation.

Defendants denied the validity and infringement of both patents.

*Plaintiff's Position*

Plaintiff claims that the inventions covered by the patents solved problems in wall and partition construction, which, for a long time, eluded many men highly skilled in the construction arts. After World War II, when the building industry sought time-saving devices to aid it in meeting the pent up demand for housing, plaintiff's clips found a general and immediate acceptance in the industry and the inventions attained great commercial success.

Plaintiff claims that the novelty in his invention is the resiliency of the clip. The clips are generally used where the partitions are of steel studs though they may also be used with wooden studs. The back or "bight" portion of the clip engages a steel stud; the forward portion or two wings of the clip engage the panel board composed of plaster or fibre and continually urges the panels to the vertical stud.

The plaintiff originally claimed that the defendant infringed claims 13 and 14 of Patent No. 2,187,752, and claims 7 and 12 of Patent No. 2,307,899. During the trial, the plaintiff withdrew its charge of infringement as to claims 13 and 7 of the respective patents.

What is claimed as new, subject to protection by letters patent, is described in the following extract of the letters patent:

"Patent No. 2,187,752

"14. In a wall construction, in combination, a vertical stud, verti-

I. Jordan Kunik, New York City, for plaintiffs.

Burgess, Ryan & Hicks, New York City, for defendants, Olson, Mecklenburger, von Holst, Pendleton & Neuman, Arthur A. Olson, Albert H. Pendleton, Arthur A. Olson, Jr., Chicago, Ill., of counsel.

MISHLER, District Judge.

This is an action for an alleged infringement of U.S. Patent No. 2,187,752,

cally spaced panels, a resilient metallic clip passing around the stud and having portions thereof projecting outwardly between the panels, and heads at the ends of said portions each of which engages the outer surfaces of both panels, the clip resiliently urging both panels into close contact with the stud."

### "Patent No. 2,307,899

"12. As an article of manufacture, a clip for use in making joints and connections between panels of plastering lath, said clip comprising a resilient wire bent to provide spaced terminal wings lying in a common plane, each of said wings having portions thereof extending transversely on opposite sides of the median line of the clip, the wire being return bent intermediate the terminal wings to provide a bight portion, said bight portion lying in a plane offset from, but substantially parallel to, the plane of the wings."

The specifications (page 1, lines 32 to 49—left column) in Patent 2,307,899, describing the uses of the invention and the objects of the same, state the following:

"More particularly, it is an object of the invention to provide a novel clip or securing element which is adapted to engage the adjacent margins of the paneling or lathing and to firmly, but resiliently hold them in position and also provide means for attaching the paneling structure either to a wood or metal supporting framework of a room. The clips are resilient and are adapted to provide a full-floating structure permitting certain relative movement of the lathing with relation to the studding or other framework so as to reduce the liability of the subsequently applied plaster to crack."

The specifications (page 1, lines 41–50—right column) in further describing the wire to be used and the drawings, describe the same in part as follows:

" * * * this clip preferably being formed of a fairly rigid wire so as to lend permanent support to the paneling or lathing while effecting a resilient connection for the purposes described. The central portion of the clip is provided with relatively wide, open loops or bights which are provided with elongated legs which are substantially parallel to each other and extend across and beyond the median line of the clip * * * "

The inventor (page 2, lines 13–19—right column) further describes the use of the clip as a "bridging" clip, in describing the drawings demonstrating the same, as follows:

" * * * The clip may be employed to connect adjacent panels at points intermediate the framing elements such as the studs and joists, and it will be obvious that the panels of the drawing would be resiliently connected by means of the clip * * * "

*Defendant's contention*

Validity of patents.

### *As To Patent 2,187,752*

The United States Patents, cited during the prosecution of this patent, do not relate to clips and are not wholly relevant to the patent.[1]

---

**1.** Defendant's Exhibit ZZ showing the following file wrapper references:

| Patent No. | Patentee | Appl. Date | Issue Date |
|---|---|---|---|
| 682,316 | Caldwell | Sept. 15, 1900 | Sept. 10, 1901 |
| 1,593,676 | Schall | Jan. 18, 1926 | July 27, 1926 |
| 1,867,329 | Ryan | July 26, 1930 | July 12, 1932 |
| 1,988,147 | Voigt | Oct. 24, 1931 | Jan. 15, 1935 |

The defendant submitted the following patents issued prior to the time of the issuance of the above-numbered patent, and relied upon by the defendant as part of the prior art:

| Patent No. | Patentee | Application Date | Issue Date |
|---|---|---|---|
| 1,013,038 | Mitchell | Apr. 14, 1910 | Dec. 26, 1911 |
| 1,057,431 | Jackson | Sept. 5, 1911 | Apr. 1, 1913 |
| 1,078,144 | Jester | Oct. 14, 1912 | Nov. 11, 1913 |
| 1,277,397 | Edwards | Nov. 26, 1917 | Sept. 3, 1918 |
| 252,839 (British) | Livingstone | Apr. 3, 1925 | June 10, 1926 |

———◆———

### As To Patent 2,307,899

The United States Patents cited five prior patents during the prosecution of this patent.[2]

The defendant submitted patents which were issued prior to the issue date of the above-numbered patent, claiming that the use of these prior art patents anticipated claim number 12 of the above-numbered patent in issue. In addition to the Mitchell, Jackson and Livingstone patents presented as part of the prior art on the question of the validity of patent number 2,187,752, the defendant submitted the following patents:

| Patent No. | Patentee | Application Date | Issue Date |
|---|---|---|---|
| 1,169,641 | Hedden | March 22, 1915 | Jan. 25, 1916 |
| 1,716,674 | Viswat | Nov. 30, 1927 | June 11, 1929 |
| 2,132,832 | Prive | July 16, 1937 | Oct. 11, 1938 |

———◆———

The defendant amended its pleadings to include plaintiff's patent 2,187,752 as another prior art patent.

### Burden of Proof—Presumption of Validity

Section 282 of Title 35 of U.S.C.A. sets forth the presumption of validity and burden of proof as follows:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

The strength or weakness of the presumption has been appraised by various courts. Where all the rival claims have been considered by the Patent Office, the presumption of validity is strong; the burden of proof cast upon the alleged infringer claiming invalidity, is to rebut the presumption of validity

---

2. Defendant's Exhibit KKK showing the following patents:

| Patent No. | Patentee | Appl. Date | Issue Date |
|---|---|---|---|
| 1,023,192 | Arnn | Sept. 20, 1910 | Apr. 16, 1912 |
| 1,624,187 | Schlafly | Aug. 23, 1921 | Apr. 12, 1927 |
| 1,673,431 | Voight | Aug. 29, 1927 | June 12, 1928 |
| 1,847,360 | Pearce | May 26, 1930 | Mar. 1, 1932 |
| 1,999,508 | Mathews | Nov. 16, 1933 | Aug. 30, 1935 |

Some of the foregoing patents cover the subject matter of the above-numbered patent; however, the functioning of the clip is dissimilar to the clip described in the patent in issue.

by clearer proof than that normally employed in a civil action; i. e., a fair preponderance of the credible testimony. The burden was defined by Justice Cardozo in Radio Corp. of America, et al. v. Radio Engineering Laboratories, Inc., 293 U.S. 1 (1934), at page 7, 55 S.Ct. 928 at page 931, 79 L.Ed. 634, in the following language:

"A patent regularly issued, and even more obviously a patent issued *after a hearing of all the rival claimants,* is presumed to be valid until the presumption has been overcome by convincing evidence of error." (Italics supplied)

■ The defendant offered prior art patents which were not cited by the United States Patent Office in the prosecution of either of the patents at issue. The presumption of validity of both patents at issue is rebutted by the prior art patents. The defendant has clearly demonstrated that the invention, novelty and utility sought to be established by the plaintiff's patents were clearly anticipated by the prior art patents. Zoomar, Inc. v. Paillard Products, Inc., 258 F.2d 527 (2d Cir. 1958); National Electric Products Corporation v. Grossman, 2 Cir., 70 F.2d 257; Cutler Mail Chute Co. v. Capital Mail Chute Corporation, 2 Cir., 118 F.2d 63; see also Lewis E. Hamel Co., Inc. v. P. & K., Incorporated, D.C., 185 F.Supp. 278, at page 282, the Court said the following:

" * * * The patents which have been used as prior art by this court were not cited as references by the Patent Office and this greatly weakens the presumption of validity if it does not destroy it. Cornell v. Adams Engineering Company, 5 Cir., 1958, 258 F.2d 874; Noble Co. v. C. S. Johnson Company, D.C.E.D. Ill.1956, 139 F.Supp. 868, affirmed 7 Cir., 1957, 241 F.2d 469. In the instant case the defendant has overcome the presumption of validity."

The Jackson clip appears to have anticipated the invention of both patents in issue. The use is described by the inventor as follows:

"My invention relates to building partitions, where a relatively thin fire-proof board is applied to vertically-disposed studs in order to form a support for the plaster of walls. This board is called 'plaster board', and, in order to make the partitions fire-proof, it is used instead of ordinary lath applied to studs to support the plaster."

Though the word resilient or resiliency is not present in the claims, the action described is one of a resilient clip. The inventor describes it thus:

"In applying the clip to the stud, the arms are caused to straddle the stud, while their outer portions engage the plaster-board on the opposite side from the stud."

In describing the engagement of two plaster boards, the inventor relates the following:

"Where this form of construction is employed, the U-shaped member of the clip is caused to straddle the stud at the horizontal meeting edges of two plaster-board sections,—while one of its extremities engages the plaster-board section above the horizontal joint, and the other extremity engages the section below the same joint, the U-shaped body member of the clip being in line with the joint and disposed between the two board sections."

The Jester patent was designed to straddle a stud and engage two plaster boards in a manner described in the patents in issue. The resilient action described in Patent No. 2,187,752 "urging both panels into close contact with the stud" is described by Mr. Jester as follows:

" * * * and this springing of the ends of the clips will cause them to firmly grip or engage the sides of the channel bars and the surface of the plaster boards, so that the said boards will be firmly held in contact with the bars."

The two other patents above mentioned that are worthy of note are the Hedden and Viswat patents. They were submitted by the defendant as proof of the invalidity of Patent No. 2,307,899.

There is a remarkable similarity in appearance in the drawings of the Hedden patent and Patent No. 2,307,899. Though Mr. Hedden intended that his invention be employed in securing plaster board or composition board to studding, the method of using the devices was quite different than the use described in the patent in issue. In addition to securing plaster board, the device was to be used in setting a standard for the thickness of plaster to be applied to the plaster board. The adaptation of the Hedden device to the uses described in plaintiff's patent would have been a reasonable and logical application to one skilled in the art of installing plaster board.

The Viswat patent was designed to be a bridging clip, holding two plaster boards by a resilient action, described in the following manner:

"* * * both boards are held by alternately opposed loops which yieldingly but firmly grasp the meeting edges of the wall board."

In describing the action of the clip in the claims, the inventor states the following:

"3. A joint for wall boards, formed of a continuous spring rod or wire, bent into alternately opposed flat S-shaped loops, the loop adapted to engage the meeting edges of the said boards in alternate relation with yielding pressure."

A novel combination of old elements which produce a new or useful device is patentable. Lewyt Corporation v. Health-Mor, Inc., et al., 7th Cir., 181 F.2d 855, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605; Blaw-Knox Company v. I. D. Lain Company, 7th Cir., 230 F.2d 373. In the case at bar, the Court finds no novelty in the clip. Plaintiff's clip was an improvement in design, but such improvement is not entitled to be rewarded with patentability. In Darison Corporation v. Watson, D.C., 182 F.Supp. 513, the Court reviewed and analyzed the authorities relative to advances or contributions to an industry, as distinguished from devices entitled to patent protection. The Court said at page 514, of 182 F.Supp.:

"The patent laws do not reward with a long-term monopoly every new contribution made to an industry. There are many valuable advances that have not been so recognized * * *. In order to justify the issuance of a patent and to receive the monopoly that the patent confers, the contribution and advance made by the applicant must be the result of the inventive faculty."

Plaintiff has argued that commercial success of the plaintiff's clip is evidence of its validity. There is no doubt that commercial success is evidence of acceptance in the industry and of the need for the item offered. It may also be pertinent to the issue, whether the use made of the prior art patents was obvious to one skilled in the particular trade. Where as the Court finds no novelty, commercial success cannot be substituted for invention to prove patentability. Great Atlantic & Pacific Tea Co. v. Super-Market Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162; Shu-Conditioner, Inc. v. Bixby Box Toe Company, Inc., D.C., 185 F.Supp. 662, page 664.

*Infringement*

Plaintiff has the burden of proving infringement. Fuller v. Yentzer, 94 U.S. 288, 24 L.Ed. 103; Harries, et al. v. Air King Products Co., Inc., 2 Cir., 183 F.2d 158, 163; Philip A. Hunt Co. v. Mallinckrodt Chemical Works, D.C., 72 F.Supp. 865, aff'd. 2 Cir., 177 F.2d 583.

The Court finds that the defendant's accused clip does not infringe Patent No. 2,307,899. The so-called "bight" portion of defendant's clip is different in construction and use, and does not lie in a

plane "substantially parallel to, the plane of the wings". The arc of the bight portion of defendant's clip intersects the plane of the wings at an angle of approximately 60 degrees.

*Conclusion*

United States Patent No. 2,187,752 and United States Patent No. 2,307,899 are invalid; if the validity of Patent No. 2,307,899 were sustained, the defendant's clip did not constitute an infringement thereof.

The foregoing opinion constitutes findings of fact and conclusions of law.

Submit judgment dismissing the complaint.